UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NANCY A. BOYNTON AND <br> PATRICIA BEEKES <br>     Plaintiffs <br><br> Vs. <br><br> FEDERAL HOUSING FINANCE <br> AGENCY, FEDERAL NATIONAL <br> MORTGAGE ASSOCIATION, AND <br> SANTANDER BANK, N.A. <br>     Defendants | <br><br><br><br> Civil Action No. C.A. No. 15-cv-350 |

## PLAINTIFFS' OBJECTION TO MOTION FOR SUMMARY JUDGMENT

The Plaintiffs Nancy A. Boynton and Patricia Beekes respectfully object to the Motion for Summary Judgment filed by Federal National Mortgage Association ("Fannie Mae") on June 29, 2017, on its counterclaim for judicial foreclosure.

Fannie Mae's Motion for Summary Judgment should be denied for three reasons. First, Fannie Mae failed to satisfy a condition precedent prior to filing its counterclaim for judicial foreclosure, namely sending a notice of default that complies with paragraph 22 of the Mortgage. While Fannie Mae sent a second notice more than twelve months after filing its counterclaim, that does not excuse Fannie Mae's duty to comply before filing the cause of action. Accordingly Fannie Mae is not entitled to judgment on its counterclaim.

Second, Fannie Mae's Motion for Summary Judgment should be denied because genuine issues of material fact exist as to whether Fannie Mae's second notice of default, dated December 16, 2016, complies with paragraph 22 of the Mortgage. Fannie Mae's second notice of default appears include charges that are not properly attributed to Plaintiffs' account in the amount of the default and the amount required to cure the default. Because paragraph 22 requires

1

the mortgagee to specify the default and to specify the amount required to cure the default, and the December 16, 2016 notice of default failed to accurately state the amount in arrears, said notice also failed to satisfy paragraph 22 of the Mortgage.

Third, if Fannie Mae is entitled to foreclose, the Plaintiffs submit that equitable procedures for a foreclosure sale should be used. The relief sought in Fannie Mae's Motion for Summary Judgment is tantamount to a strict foreclosure, which is not permitted in Rhode Island, since a judicial foreclosure proceeding is to be "heard, tried, and determined according to the usages in chancery and the principles of equity." Rhode Island General Laws § 34-27-1.

## ARGUMENT

### I. Fannie Mae Is Not Entitled To Judgment As A Matter Of Law Because It Failed To Comply With Paragraph 22 Prior To Commencing This Counterclaim For Judicial Foreclosure

Prior to filing its counterclaim for judicial foreclosure on November 23, 2015, Fannie Mae failed to send the Plaintiffs a notice of default that strictly complied with paragraph 22 of the Mortgage. Therefore, Fannie Mae failed to satisfy a necessary condition precedent prior to commencing its counterclaim for judicial foreclosure, and judgment must enter in favor of the Plaintiffs on said counterclaim. Fannie Mae did send a second notice of default on December 16, 2016, more than a year after filing this counterclaim. That second notice does not cure Fannie Mae's failure to satisfy all conditions precedent prior to filing the cause of action.

In paragraph 22 of the Mortgage, Fannie Mae agreed to send the Plaintiff a notice "prior to acceleration" which provides the Plaintiff with certain required information. On October 11, 2016, this Court ruled in *Martins v. Fed. Hous. Fin. Agency*, No. 15-235-M-LDA, 2016 U.S. Dist. LEXIS 142037 (D.R.I. Oct. 11, 2016), that paragraph 22 was a condition precedent to the

valid exercise of a foreclosure, and that a mortgagee must strictly comply with the terms of the mortgage prior to foreclosure. "Simply put, if a mortgagee agrees to give a certain notice before a foreclosure, it does not matter whether it is a judicial or non-judicial foreclosure. The mortgagee must do that which it agreed." *Id.* at \*12 (D.R.I. Oct. 11, 2016); See also *In re Demers*, 511 B.R. 233, 238 (Bankr. D.R.I. 2014) (holding compliance with paragraph 22 to be a condition precedent to the mortgagee's right to accelerate the Note and pursue its remedy of foreclosure against the Property).

A mortgagee is required to provide the notice of default "prior to acceleration" and prior to seeking a foreclosure. See paragraph 22. Only after the date specified in the notice of default passes, and the borrower has not cured the default, does the mortgagee have the right to commence an action for a foreclosure. *Wells Fargo Bank, N.A. v. Girouard*, 2015 ME 116, ¶ 7, 123 A.3d 216, 218 (holding that sending a proper notice of default prior to the commencement of the case is an essential element of a foreclosure claim). A mortgagee's inability to prove it provided a proper notice prior to commencing a foreclosure action entitles the mortgagor to a judgment on the claim, and not merely a dismissal of the complaint without prejudice. *Id*. S*ee also New Haven Sav. Bank v. LaPlace*, 66 Conn. App. 1, 12, 783 A.2d 1174, 1181, cert. denied, 258 Conn. 942, 786 A.2d 426 (2001) ("Where the terms of the note and mortgage require notice of default, proper notice is a condition precedent to an action for foreclosure."); *Bank of N.Y. Mellon v. Nunez*, 180 So. 3d 160, 162 (Fla. Dist. Ct. App. 3d Dist. 2015) ("The notice requirements set forth in paragraph 22 of the defendants' mortgage are conditions precedent to the filing of a foreclosure action against the borrower."); *Cathay Bank v. Accetturo*, 2016 IL App (1st) 152783, ¶ 2, 408 Ill. Dec. 675, 678, 66 N.E.3d 467, 470 ("[A] notice provision with an acceleration clause in a mortgage is a condition precedent and prescribes servicing requirements

that a lender must comply with in order for the lender to have a right to file an action to recover possession of a secured property."); *HSBC Mtge. Corp. (USA) v. Gerber*, 2012 NY Slip Op 8098, ¶ 1, 100 A.D.3d 966, 966-67, 955 N.Y.S.2d 131, 132 (App. Div.) (Service of a notice of default prior to commencement of the action for judicial foreclosure is a condition precedent and part of the mortgagee's prima facie case); *United States Bank N.A. v. Aguilar-Crow*, 7th Dist. Mahoning No. 15 MA 0113, 2016-Ohio-5391, ¶ 40 ("The notice of default and acceleration provisions of a note and mortgage are conditions precedent to the initiation of a foreclosure action."); *Cenlar FSB v. Malenfant*, 2016 VT 93, ¶ 39, 151 A.3d 778, 792 (A notice of default is required "as a prerequisite to acceleration of the note and an action for foreclosure."); *De La Cruz v. Bank of N.Y.*, No. A-17-CA-00163-SS, 2017 U.S. Dist. LEXIS 80170, at *8 (W.D. Tex. May 25, 2017) ("a notice of default is a condition precedent to a foreclosure action…").

Rhode Island law clearly requires that a condition precedent to assert a claim must be satisfied prior to the commencement of an action on the claim. For example, in the case of a claim against a municipality, a plaintiff must provide the municipality with notice of the claim in compliance with Rhode Island General Laws § 45-15-5 before commencing the action. *See Prout v. City of Providence*, 996 A.2d 1139, 1142 (R.I. 2010). Similarly, conditions precedent to recovery in an insurance contract must be satisfied prior to commencing the action. *Grady v. Home Fire & Marine Ins. Co.*, 27 R.I. 435, 444, 63 A. 173, 176 (1906) (determination of amount of loss through arbitration). In a landlord-tenant action, proper notice to quit must be given before the eviction action is commenced. *Abbenante v. Giampietro*, 75 R.I. 349, 353, 66 A.2d 501, 503 (1949). If an action is commenced based on an invalid notice, later evidence cannot correct the earlier error and save the cause of action. *De Luca v. Cinima*, 72 R.I. 346, 349, 51 A.2d 369, 370 (1947) (if notice to quit is missing information required by the statute, the plaintiff

cannot "be permitted to supply the omission by oral testimony"). Likewise, the Superior Court of Rhode Island required a notice of default provision in a performance bond to be satisfied prior to commencement of an action in a construction dispute. *Raito, Inc. v. Cardi Corp.*, No. PB 07-3235, 2010 R.I. Super. LEXIS 61, at *4 (R.I. Super. Ct. Apr. 5, 2010). There is no reason to treat the notice of default requirement in a residential mortgage any different from the way other conditions precedent are treated under Rhode Island law.

The Plaintiffs have briefed this argument more fully in their Memorandum of Law in Support of their Motion for Summary Judgment filed on June 30, 2017, at pages 5-8, and incorporate those arguments here by reference.

Therefore, because Fannie Mae failed to send a notice of default that complied with paragraph 22 prior to filing its counterclaim for judicial foreclosure, Fannie Mae failed to perform the necessary conditions precedent to maintain its cause of action for judicial foreclosure. It is respectfully submitted that the court should deny Fannie Mae's summary judgment on this ground, and grant Plaintiff's motion for summary judgment. If the court so rules, the court need not reach the remaining issues in this memorandum.

**II. A Genuine Issue of Material Fact Exists as to whether Fannie Mae Complied with Paragraph 22**

If the Court proceeds to consider Fannie Mae's Motion for Summary Judgment based on the notice of default sent on December 16, 2016, even though that notice was sent more than 12 months after Fannie Mae filed its counterclaim for judicial foreclosure, the Court should deny Fannie Mae's motion, as genuine issues of material fact exist as to whether Fannie Mae complied with paragraph 22 of the Mortgage, which is a condition precedent to foreclosure. Specifically, Plaintiffs contend that the notice of default dated December 16, 2016, does not accurately specify

the default or the amount Plaintiffs must pay to cure the default, and therefore does not satisfy the requirements of paragraph 22.

On or about December 16, 2016, Santander Bank, N.A., as servicing agent for Fannie Mae, sent a notice of default to Plaintiffs by certified mail. See Fannie Mae's Statement of Undisputed Facts, Docket Entry 32-2 at ¶ 13 and Exhibit I. The notice of default claimed that the Mortgage was in default for the following reason:

> [P]ayment of $1886.17 have not been made from 04/01/2011 to the present. This default must be cured by 01/30/2017. The total amount now required to cure this default, as of the date of this letter, is $100,552.85. The total amount includes late charges and any other charges that have accrued to date. If you disagree with the assertion that a default has occurred or the correctness of the calculated amount required to cure the default, contact: …

See Exhibit I.

The Plaintiffs disagreed with the calculation of the amount required to cure the default for two reasons. First, the 2016 notice of default does not appear accurate on its face. Payments of $1886.17 over the 68 month period described in the 2016 notice of default would equal $128,259.56 (which is significantly more than the $100,552.85 that Santander claims). However, the monthly mortgage payments are not $1,886.17. On November 25, 2013, Santander sent a notice of payment change calculating the monthly mortgage payment at $1,296.60. See Ankrom Declaration dated July 31, 2017 at ¶ 8; Exhibit 17. The payment of $1,296.60 over 68 months produces a significantly lower arrearage: $ 88,168.80. It is not clear how Santander came up with the $1,886.17 monthly payment or the $100,552.85 claimed arrearage.

Second, the 2016 notice of default states that it "includes late charges and any other charges that have accrued to date." While late charges are appropriately added pursuant to paragraph 1 of the Mortgage, charges related to a default, such as attorney's fees, foreclosure costs, and property preservation fees, are not properly charged to the account until after the date in the notice of default

6

has passed and the Plaintiffs have not cured. See Paragraph 22 (permitting lender to collect expenses incurred in pursuing the remedies provided in paragraph 22, such as exercising the power of sale, only after sending a notice of default that complies with that paragraph); *Accord. In re Demers*, 511 B.R. 233, 240 (2014) (holding that because lender did not comply with paragraph 22, lender was not allowed to recover for foreclosure related expenses). If these charges related to a prior invalid foreclosure were added to the Plaintiffs account, and not removed after the foreclosure was rescinded, then what Santander claims is the amount required to cure the default is not accurate.

Due to Plaintiffs' disagreement with Santander's cure figure, the Plaintiffs sent a letter on January 24, 2017 to Santander, at the address listed on the 2016 notice of default and also to counsel for Santander, to dispute the calculation of the amount needed to cure the default as stated in the 2016 notice of default. See Ankrom Declaration dated July 31, 2017 at ¶ 3-5; Exhibit 16. In the said letter, the Plaintiffs disputed that they were in arrears for $100,552.85 and that the stated monthly payment of $1,886.17 was incorrect. Plaintiffs requested Santander to identify all charges to the account, explain the calculations used to reach the $1,886.17, and requested Santander remove attorney's fees and costs from the Plaintiffs' account as their imposition prior to the cure date violated Paragraph 22. See Exhibit 16.

The January 24, 2017, letter constitutes a "notice of error" pursuant to the Real Estate Settlement Procedures Act ("RESPA"), Regulation X, 12 C.F.R. §1024.35 (a), because it is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." Pursuant to 12 C.F.R. § 1024.35 (e)(3)(i)(B), Santander, as servicing agent for Fannie Mae, should have responded to the notice of error

within thirty business days. However, Santander still has not responded to the notice of error, even though more than 120 business days have passed. Further, Santander never explained how it calculated the $100,552.85 claimed arrearage, failed to identify the charges on the account, and refused to remove any default related charges that were imposed in violation of Paragraph 22. See Ankrom Declaration dated July 31, 2017 at ¶ 6.

Because the Plaintiff sent a Notice of Error challenging the amounts stated in the 2016 notice of default, and because Santander, as servicing agent for Fannie Mae, failed to respond to the Notice of Error and explain the calculation of the claimed arrearage, a genuine issue of material fact exists as to whether the 2016 notice of default specifies the default and the amount required to cure the default, and therefore whether the notice satisfies paragraph 22 of the Mortgage.

In the alternative, the failure to respond to the Notice of Error is grounds to delay consideration of Fannie Mae's motion for summary judgment under Rule 56 (d) until Fannie Mae explains the calculations of the $100,552.85 arrearage claimed in the 2016 notice of default. Paragraph (d) of Rule 56 of the Federal Rules of Civil Procedure provides the following:

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Here, the Plaintiffs have demonstrated that they cannot present facts essential to justify their opposition to Fannie Mae's Motion for Summary Judgment. Fannie Mae based its motion on a notice of default that was sent on December 16, 2016, more than twelve months after Fannie Mae commenced its counterclaim for foreclosure. The 2016 notice of default states that the amount to cure includes other charges related to the default. It is reasonable to assume that those

charges include foreclosure costs, such as costs related to the 2013 foreclosure which this court has rescinded, that were incurred prior to the 2016 notice of default in violation of paragraph 22. The Plaintiffs acted with diligence to dispute the charges in the 2016 notice of default by sending the Notice of Error on January 24, 2017. However, despite its obligation to respond to the Plaintiffs' Notice of Error within thirty business days, neither Fannie Mae nor Santander have responded to the Notice of Error, or made any attempt to explain their calculation of the $100,552.85 claimed arrearage. See Ankrom Declaration dated July 31, 2017 at ¶6. Without knowing how this arrearage was calculated, the Plaintiffs cannot set forth sufficient evidence to prove that the 2016 notice of default does, in fact, fail to comply with paragraph 22 of the Mortgage.

Plaintiffs therefore respectfully request the Court to deny Fannie Mae's motion or delay consideration until Fannie Mae explains how the $100,552.85 arrearage was calculated.

### III. In Rhode Island, Judicial Foreclosures Require A Sale Under The Supervision Of The Court.

If Fannie Mae is entitled to foreclosure pursuant to Rhode Island General Laws § 34-27-1, it must do so through a sale under the supervision of the court. Fannie Mae seeks a judgment of foreclosure, but does not state what procedures that Fannie Mae intends to use to foreclose on the property, and whether those procedures will occur under the supervision of the court.

It appears that Fannie Mae is asking the court to transfer title to Fannie Mae without a sale of the property, which is often called a "strict foreclosure." In its prayer for relief, Fannie Mae requests "[a]n order and judgment of this Court foreclosing the mortgage and the

Borrowers' right of redemption."[1] See Docket Entry No. 15 at page 16.[2] Fannie Mae does not request an order of sale. However, Rhode Island law does not permit a strict foreclosure.[3]

A strict foreclosure does not satisfy principles of equity. The United States Supreme Court called strict foreclosure "draconian." *Bfp v. Resolution Tr. Corp.*, 511 U.S. 531, 541, 114 S. Ct. 1757, 1763 (1994). The highest courts of several states have called strict foreclosure proceedings "[t]he antithesis of fairness;" *Simard v. White*, 383 Md. 257, 317, 859 A.2d 168, 204 (2004); and "the most harsh of the mortgage remedies;" *Huntington v. McCarty*, 174 Vt. 69, 73, 807 A.2d 950, 953-54 (2002); and an "unusual, exceptional and severe remedy." *Moulton v. Cornish*, 138 N.Y. 133, 141, 33 N.E. 842, 844 (1893). See also *Wilder v. Haughey*, 21 Minn.

---

[1] In Rhode Island, it is not settled whether there is a right of redemption after a foreclosure sale under the power of sale. Contrast *In re Medaglia*, 402 B.R. 530 (Bankr. D.R.I. 2009) (holding debtor had no right to cure default under 11 U.S.C. 1322 after a sale has occurred under statutory power of sale at RI Gen. Laws § 34-11-22; with *Anderson v. Anderson*, 107 R.I. 202, 206, 266 A.2d 56, 59 (1970) (setting aside foreclosure sale due to "strong equities in favor of the owner of an equity of redemption"). However, in the case of a foreclosure "by process of law" which includes a judicial foreclosure under § 34-27-1, there is a three-year right of redemption. See § 34-23-3.

[2] Fannie Mae also requests "[i]mmediate possession of the mortgage property in favor of Federal National Mortgage Association." In Rhode Island, possession requires a notice of termination of tenancy by the new owner after a foreclosure sale has occurred. See RI Gen. Laws § 34-18-38.2 (e); § 34-18.1-2; See also *Johnson v. Donaldson*, 17 R.I. 107, 20 A. 242 (1890) (former owner in possession after foreclosure sale is tenant at suffrance and entitled to notice to quit prior to eviction action).

[3] Only two states, Connecticut and Vermont, permit foreclosure by a judgment of strict foreclosure without a sale, for a foreclosure of a mortgage on an owner-occupied property. See National Consumer Law Center, Foreclosures (3d ed. 2010) § 4.2.4. See also *Ocwen Fed. Bank, FSB v. Charles*, 95 Conn. App. 315, 323, 898 A.2d 197, 204 (2006) (discussing Connecticut's strict foreclosure procedures) *Huntington v. McCarty*, 174 Vt. 69, 73, 807 A.2d 950, 953-54 (2002) (discussing Vermont's strict foreclosure procedures). Other states permit strict foreclosure for other securities that are not mortgages, like land contracts. see *Steiner v. Wis. Am. Mut. Ins. Co.*, 2005 WI 72, ¶55, 281 Wis. 2d 395, 410, 697 N.W.2d 452, 459. Other states permit an action for strict foreclosure as a quiet title action brought after a foreclosure sale has already occurred. See *UPS Capital Bus. Credit v. Abbey*, 408 N.J. Super. 524, 533, 975 A.2d 548, 554 (Super. Ct. 2009); *Ridge Realty LLC v. Goldman*, 263 A.D.2d 22, 26, 701 N.Y.S.2d 69, 72 (App. Div. 1999).

101, 103-04 (1874) ("In this country, as a general rule, a sale is almost universally regarded as the just and appropriate remedy. … Where the estate is pledged as collateral security, merely, for the payment of the debt, a strict foreclosure would often be unjust and inequitable, disappoint the intentions of the parties, defeat the object of the security, . . . and sometimes produce most serious injury to the mortgagor, or inconvenience and loss to the mortgagee."); *Atl. Oceanic Kampgrounds, Inc. v. Camden Nat'l Bank*, 473 A.2d 884, 889 (Me. 1984) ("it is entirely fair to assume the Legislature regarded strict foreclosure as working an unjust and inequitable result, namely, the forefeiture [sic] of the excess of the value of the land over the amount of debt remaining. It is noteworthy that the majority of sister jurisdictions do not recognize strict foreclosure.").

According to the Restatement of Property, "[a] typical [judicial foreclosure] proceeding entails multiple steps: a filing of a foreclosure complaint and lis pendens notice; service of the complaint on the owner and all others having an interest in the real estate junior to the mortgage being foreclosed (since such persons must be made parties-defendants); a judicial hearing; the foreclosure decree; the notice of foreclosure sale; the actual public sale conducted by the sheriff or other court officer; proceedings with respect to surplus, if any; the entry of a decree for a deficiency, if any; and, in some cases, an appeal." See Restat 3d of Property: Mortgages, § 8.2, Cmt (a). Similarly, in their treatise on Real Estate Finance Law, Profs. Grant S. Nelson and Dale A. Whitman write, "In the absence of statutory provision, a court of equity has ample power to order a master to make a judicial sale. The decree in such cases will commonly contain provisions specifying the giving of notice, the time, place, manner and terms of conducting the sale, and other matters that are generally covered by statutory regulation." Grant S. Nelson & Dale A. Whitman, Real Estate Finance Law, Practitioner Treatise Series (3d ed. 1993) § 7.16. A

judicial foreclosure sale "requires confirmation by the court," which "has power to set aside a sale under certain circumstances and order a new one." Id.

A judicial foreclosure in Rhode Island is authorized by General Laws § 34-27-1. While that statute does not specify the procedures that should be used, the statute requires the judicial foreclosure complaint to be "heard, tried, and determined according to the usages in chancery and the principles of equity." Therefore, judicial foreclosures in Rhode Island require a sale under the direction of the court. *Wyss v. Wyss*, No. WC-2013-0024, 2014 R.I. Super. LEXIS 89, at *11 (R.I. Super. Ct. June 26, 2014) ("Judicial foreclosure is defined as a 'foreclosure method by which the mortgaged property is sold through a court proceeding requiring many standard legal steps such as the filing of a complaint, service of process, notice, and a hearing.'") (quoting Black's Law Dictionary 658 (7th ed. 1999)). See also *Walsh v. Morgan*, 60 R.I. 349, 362-363 (1938) (in a foreclosure action, Superior Court has plenary authority to do equity, including determining the amount that is owed, revising the accumulated interest, and providing opportunity for the mortgagors to repay the proper amount to the proper party before any foreclosure takes place).[4]

---

[4] *Walsh v. Morgan, supra*, involved a mortgagor's challenge to a foreclosure sale, where the original note and mortgage that had been lost. The evidence showed that the note and mortgage had been delivered to Mary Coyle, but the source of the money was actually by Thomas Dorsey, her brother. The evidence showed Coyle only owed bare legal title to the mortgage, apparently in trust for Dorsey, who "enjoyed the beneficial interest of the investment." Id. at 353-354. Both Dorsey and Coyle had passed away, and Dorsey had suffered from a mental illness for a long time prior to his death. Id at 352, 353. Coyle's administrator attempted to exercise the power of sale in the mortgage, and the owners of the property filed a complaint in Superior Court claiming that the mortgage had expired through lapse of time (an argument that ultimately failed.) Id., 352, 354. However, the Court held that under the special circumstances of the case, an injunction should issue that the power of sale not be exercised, and instead that the mortgage may only be foreclosed in a suit in equity for redemption or for foreclosure pursuant to the statutory predecessor of § 34-27-1. Id., 362. The Court held that in such a suit, equity required the Superior Court to determine the amount the owners should pay for a discharge of the mortgage, and to provide an opportunity for the owners to pay that before any foreclosure should occur.

Since § 34-27-1 requires procedures consistent with "usages in chancery and principles of equity," this statute contemplates sale procedures that were used at common law for choses in equity, such as a partition sale. The common law equitable procedures for a partition sale have been codified in Chapter 15 of Title 34 of the Rhode Island General Laws. Principles of equity require the court to do the following:

- Conduct the sale "under the direction of the court (see, e.g. § 34-15-16);
- determine the fair market value of the property (see, e.g. § 34-15-16);
- appoint guardians ad litem to protect the interests of minors, incompetent persons, or servicemembers (see, e.g. §34-15-11);
- ensure that the owner(s), and all persons in possession of the property, receive appropriate notice of the sale, including absent or unknown parties (see, e.g. §§ 34-15-7; 34-27-7); and
- appoint independent commissioners to make the sale, who will then report to the court concerning the manner in which the sale was conducted (see, e.g. § 34-15-27) to ensure that the sale is conducted in a commercially reasonable manner by a disinterested party.

While these procedures have been codified specifically for partition sales, Chapter 15 of Title 34 merely codifies the principles of equity at common law to be used for all sales under authority of court. Even though there are statutory procedures, a partition action remains an action in equity, committed to the discretion of a Justice of the Superior Court, who oversees the

---

Under the special circumstances in that case, where the mortgagors tried to pay but could not locate the mortgagee for several years (due to death and infirmary), equity demanded a revision on the amount of interest that had accrued. Id. While not providing specific procedures, this case supports the proposition that when a court considers a suit in equity for foreclosure, the court should oversee all aspects of the process to ensure equity is done, not merely pass title to the mortgagor.

entire process. See *Bianchini v. Bianchini*, 76 R.I. 30 (R.I. 1949); *Angevine v. O'Mara*, 35 R.I. 253 (R.I. 1913).

Rhode Island courts use similar equitable procedures in the case of a foreclosure of a mechanic's lien. In General Laws § 34-28-21, the court is empowered to enter an order of sale after determining the amount and priorities of liens on the property. Then, according to that statute, the court appoints a master to sell the property "in accordance with the instructions, restrictions and conditions" that the court orders in the order of appointment. As the statute sets out an order from the court and fulfillment by a master, it is implied that the master would report back to the court that the sale was carried out in accordance with the court's instructions. Further, General Laws § 34-28-22 requires the court to "prescribe the notice" of the sale and provide instructions and directions to carry out the sale. See *R.J. Murgo Housesmith, Inc. v. Murphy*, 633 A.2d 1354, 1354 (R.I. 1993) (reviewing procedures under §§ 34-28-21 and 34-28-22).

Therefore, if foreclosure is warranted, Plaintiffs respectfully request the court to deny the relief requested by Fannie Mae. Instead the court should enter such orders for a foreclosure sale as equity demands, including orders appointing a commission to effectuate the sale (such as an attorney on the court's receivership list), procuring a title abstract report to determine parties in interest, appointing guardians ad litem to protect the interests of minors, incompetent persons, or servicemembers, if any, providing notice of the sale to all parties in interest, obtaining a property valuation report, and confirming the sale based on a report of the commission to ensure that the entire sale process is completed in an equitable and commercially reasonable manner.

## **CONCLUSION**

Plaintiffs respectfully request the Court to deny Fannie Mae's Motion for Summary Judgment as to Fannie Mae's Counterclaim, and instead grant Plaintiffs' Motion for Summary

14

Judgment. A reasonable jury could not find that the Fannie Mae complied with paragraph 22 of the Mortgage, which is a condition precedent to the commencement of an action for foreclosure. In the alternative the Plaintiffs respectfully submit that a genuine issue of material fact exists as to whether the notice of default dated December 16, 2016, satisfies paragraph 22 of the Mortgage. Should the court proceed to a judgment of foreclosure, the court should prescribe the sale process via issuance of an order of sale that includes appointment of a commission to effectuate the sale, proper notice to all parties in interest, and the approval of a report of the sale after the sale has occurred.

> Respectfully submitted,
>
> Nancy A. Boynton and
> Patricia Beekes
> By Their Attorneys,
>
> /s/ Jeffrey C. Ankrom
> Jeffrey C. Ankrom, Esq. (#7663)
> Rhode Island Legal Services
> 56 Pine Street, Suite 400
> Providence, RI, 02903
> (401) 274-2652, ext. 138
> (401) 272-4280 fax
> jankrom@rils.org
>
> /s/ Steven Fischbach, Esq.
> Steven Fischbach, Esq. (#3259)
> Rhode Island Legal Services
> 56 Pine Street, Suite 400
> Providence, RI, 02903
> (401) 274-2652, ext. 182
> (401) 272-4280 fax
> sfischbach@rils.org
>
> Dated: July 31, 2017

**CERTIFICATE OF SERVICE**

This is to certify that on July 31, 2017, I served a copy of the Motion for Summary Judgment through the court's CM/ECF system:

Samuel Bodurtha, Esq.
Ethan Tieger, Esq.
Hinshaw & Culbertson, LLP
321 South Main Street, Suite 301
Providence, RI 02903

Matthew Kane, Esq.
Laredo & Smith, LLP
101 Federal Street Suite 650
Boston, MA 02110

/s/ Jeffrey C. Ankrom, Esq.
Jeffrey C. Ankrom, Esq.