UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NANCY A. BOYNTON AND<br>PATRICIA BEEKES<br>    Plaintiffs | \|<br>\|<br>\|<br>\| |
| Vs. | \|    Civil Action No. C.A. No. 15-cv-350 |
| FEDERAL HOUSING FINANCE<br>AGENCY, FEDERAL NATIONAL<br>MORTGAGE ASSOCIATION, AND<br>SANTANDER BANK, N.A.<br>    Defendants | \|<br>\|<br>\|<br>\|<br>\| |

**PLAINTIFFS' REPLY TO FANNIE MAE'S OBJECTION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

While acknowledging that the decision in the case of *Martins v. Fed. Hous. Fin. Agency,* 214 F. Supp. 3d 163 (D.R.I. 2016), is dispositive of this case, Fannie Mae asks the court to disregard that decision and rehashes the arguments raised in *Martins* that the Court already rejected. Notably, Fannie Mae has not cited a single case to counter the eight cases cited by the Plaintiff which held that a mortgagee must comply with the notice of default requirements of paragraph 22 prior to commencing an action for foreclosure. As Fannie Mae failed to comply with paragraph 22 prior to filing its counterclaim for judicial foreclosure, judgment must enter in the Plaintiff's favor.

1. **This Court should apply the *Martins* decision and require strict compliance with Paragraph 22**

On pages 4-7 of its Memorandum of Law in Support of its Objection to Plaintiff's Motion for Summary Judgment (hereafter, "Fannie Mae's Memo"), Fannie Mae argues that the Court should not apply the *Martins* decision to this case because, it claims, *Martins* created a new law that should not be applied retroactively to the notice that Santander sent on October 8,

1

2013. Specifically, on page 7, Fannie Mae asserts: "In this case, Santander issued a notice of default to Plaintiffs in 2013, and Fannie Mae filed its counterclaim for judicial foreclosure in reliance on that notice before this Court issued the 2016 decision in *Martins* and without any decision interpreting compliance with Paragraph 22 of a residential mortgage under Rhode Island law."

As an initial matter, the Plaintiffs note that applying the *Martins* decision to the facts of this case is not a retroactive application of that decision. Fannie Mae has not completed a foreclosure sale and is still able to comply with paragraph 22 by dismissing its counter claim for judicial foreclosure and filing a new judicial foreclosure action based on the notice of default Santander sent in December, 2016.

Even if denying Fannie Mae judgment in this case be considered a retroactive effect of the *Martins* decision, the *Martins* decision should be given retroactive effect because that is the general rule for applying judicial decisions in Rhode Island. On pages 6-7 of Fannie Mae's Memo, Fannie Mae urges the Court to follow the decision of *Pinti v. Emigrant Mortg. Co., Inc.*, 472 Mass. 226, 243, 33 N.E.3d 1213, 1227 (2015), and only require strict compliance prospectively from the date of the *Martins* decision. Fannie Mae argues that because Massachusetts gives only prospective effect to judicial decisions affecting Massachusetts contract and property law, this court should follow Massachusetts law and apply the *Martins* decision prospectively only. However, in Rhode Island, judicial decisions are given retroactive effect even if those decisions affect property law. See *Wolf v. AMTRAK*, 697 A.2d 1082, 1085 (R.I. 1997) ("a prospective-only approach to the operation of a judicial decision is the exception rather than the rule"); *Landmark Med. Ctr. v. Gauthier*, 635 A.2d 1145, 1153 (R.I. 1994) (applying a three-factor approach and concluding that "a prospective only approach would be

inequitable"). Because the *Martins* decision is consistent with established Rhode Island precedent as noted below, the exception of a prospective-only approach is not warranted.

Contrary to Fannie Mae's argument at page 6 of Fannie Mae's Memo, *Martins* did not establish a new principle of law. There are several cases decided prior to *Martins* and prior to Fannie Mae filing its counterclaim that required the mortgagee to comply with paragraph 22. For example, on June 5, 2014, the United States Bankruptcy Court for the District of Rhode Island held compliance with paragraph 22 to be a condition precedent to the exercise of the power of sale. See *In re Demers*, 511 B.R. 233, 238 (Bankr. D.R.I. 2014). While the *In re Demers* decision was rendered about six months after Santander sent the notice of default to the Plaintiffs, the decision was rendered more than one year and five months before Fannie Mae filed its counterclaim for judicial foreclosure.

Further, the Martins decision is consistent with Rhode Island cases involving mortgage foreclosures, which have repeatedly held that mortgagees must comply with the terms of the mortgage prior to instituting foreclosure. On April 12, 2013, the Rhode Island Supreme Court stated that "[t]he power to sell under a mortgage or deed of trust is a matter of contract between the mortgagor and mortgagee under the conditions expressed in the instrument, and does not exist independently of it." *Bucci v. Lehman Bros. Bank*, 68 A.3d 1069, 1084-1085 (R.I. 2013) quoting 55 Am. Jur. 2d Mortgages § 472 at 202 (2009). On April 3, 2013, Rhode Island Superior Court Justice Rubine stated that a notice of foreclosure sale "must comply with both the statutory requirements, as well as requirements set forth in the mortgage instrument…. [A] foreclosing mortgagee's failure to comply with certain notice requirements contained in the Mortgage and in the pertinent state statute will invalidate a foreclosure sale." *USA Residential Properties, LLC v. Dilibero*, C.A. No. KD 2013-0174, at *6 n.2 (April 3, 2013; *Rubine, J.*), *citing* 55 Am. Jur. 2d

Mortgages § 508, 511 & n.3 (2009). Both of these decisions were issued about six months before Santander sent the 2013 notice of default to the Plaintiffs. While these decisions do not specifically mention paragraph 22, they both hold that a mortgagee must comply with the terms of the mortgage before it is entitled to foreclose.

Recently, Magistrate Sullivan considered the *Martins* decision to be not a new development of law, but rather a modern application of Rhode Island law in existence for over a hundred years that requires mortgagees to act in extreme good faith when exercising the power of sale. See *Pemental v. Bank of N.Y. Mellon*, No. 16-483S, 2017 U.S. Dist. LEXIS 122971, at *13 n.11 (D.R.I. May 10, 2017) (While a duty to act in extreme good faith "may have been recognized in a previous era in limited circumstances, it has long since been subsumed by the twenty-first century obligation of the mortgagee strictly to comply with the notice requirements of the mortgage"), report and recommendation accepted by *Pemental v. Bank of N.Y. Mellon*, No. 16-483 S, 2017 U.S. Dist. LEXIS 120409 (D.R.I. Aug. 1, 2017, Smith, C.J.).

Further, the *Martins* decision is foreshadowed by foreclosure cases throughout the country regarding compliance with paragraph 22. Long before this court issued the *Martins* decision, and long before Santander sent the notice of default to the Plaintiffs in October, 2013, courts in other jurisdictions required strict compliance with the notice of default provision in paragraph 22 of Fannie Mae's mortgage form. See *Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168, 172 (Ala. 2012) (paragraph 22 in Fannie Mae mortgage form requires proper notice of intent to accelerate prior to acceleration and foreclosure sale); *Wells Fargo Bank, N.A. v. Beirne*, 2011-Ohio-6678, ¶ 15 (Ct. App., Medina County Dec. 27, 2011) (paragraph 22 in Fannie Mae mortgage form requires mortgagee to give notice of default and opportunity to cure prior to accelerating the balance due and filing an action to foreclose). Indeed, as far back as 1877 courts

required strict compliance with the terms of the mortgage when pursuing foreclosure. See *Shillaber v. Robinson*, 97 U.S. 68, 78 (1877) ("the validity of the sale being wholly dependent on the power conferred by the instrument, a strict compliance with its terms is essential"); *Dewberry v. Bank of Standing Rock*, 227 Ala. 484, 492, 150 So. 463, 469 (1933) ("[A] sale under the power [of sale] in a mortgage or trust deed must be conducted in strict compliance with the terms of the power."); *Coppola v. Superior Court*, 211 Cal. App. 3d 848, 868, 259 Cal. Rptr. 811, 821 (1989)("A nonjudicial foreclosure sale under the power of sale in a deed of trust or mortgage, on the other hand, must be conducted in strict compliance with its provisions and applicable statutory law."); *Eubanks v. Becton*, 158 N.C. 230, 234, 73 S.E. 1009, 1011 (1912) ("there must be a strict compliance with the terms of the mortgage before the power can be exercised"); *Moore v. Dick*, 187 Mass. 207, 211, 72 N.E. 967, 968 (1905) ("It is familiar law that one who sells under a power must follow strictly its terms. If he fails to do so there is no valid execution of the power and the sale is wholly void"); *Ogden v. Gibraltar Savings Ass'n*, 640 S.W.2d 233-234 (Tex. 1982) (notice of intent to accelerate must be clear and unequivocal). Because the *Martins* decision is consistent with this established line of cases interpreting the terms of a mortgage in the foreclosure context there is no reason to give it only prospective effect.

In addition to ignoring all the cases that preceded *Martins*, giving only prospective effect to *Martins* will lead to absurd results. Rather than a bright line rule requiring all parties to a contract "do that which it agreed"; see *Martins*, supra, 214 F. Supp. 3d at169; Fannie Mae wants the Court to apply different standards of law based on when the mortgagee sent the notice of default. Fannie Mae has not stated a bright line date for when those different standards apply: e.g., before this Court issued the *Martins* decision on October 11, 2016, before the Rhode Island Bankruptcy Court issued the decision of *In re Demers* on June 5, 2014, or at some other

5

unspecified time. Nor has Fannie Mae stated what standard of law should govern at the unspecified earlier time, such as substantial compliance, or what the mortgagees must do to satisfy that earlier standard. The standard articulated in *Martins,* that a mortgagee must strictly comply with the terms of the written contract, is a clear standard that is defined by the scope and terms of the contract, and is consistent with established precedent.

Perhaps Fannie Mae is arguing that prior to *Martins*, it does not have to comply with paragraph 22 at all. In its objection, Fannie Mae does not argue that even substantial compliance with paragraph 22 is required prior to the date of the *Martins* decision. The words "substantial compliance" do not appear anywhere in Fannie Mae's memorandum. Even if the court held, without having a single supporting citation from Fannie Mae, that only substantial compliance is required for notices of default that occurred prior to *Martins*, the October 2013 notice that Santander sent to the Plaintiffs fails to even substantially comply with paragraph 22. Among other omissions, Santander's 2013 notice of default failed to inform the Plaintiffs of their "right to bring a court action to assert the non-existence of a default." Many courts have found that a notice that lacks this language fails to even substantially comply with paragraph 22. *Bank of New York Mellon v. Nunez*, 180 So.3d 160, 163 (Fla. Dist. Ct. App. 3d Dist. 2015) (citing *Haberl v. 21st Mortg. Corp.*, 138 So. 3d 1192, 1192 n.1 (Fla. Dist. Ct. App. 5th Dist. 2014)).

If Fannie Mae is not arguing that substantial compliance is required prior to *Martins*, then Fannie Mae must be arguing that compliance with paragraph 22 is not required <u>at all</u> prior to the *Martins* decision, or perhaps prior to the decision of *In re Demers*. However, the court should not permit Fannie Mae to ignore paragraph 22 completely. The Plaintiffs entered into a mortgage contract that includes paragraph 22 on July 18, 2007. See Mortgage, attached to the Complaint at

6

Exhibit 11. It would violate the law of the contract for the court to permit Fannie Mae to ignore "that which it agreed" to do. See *Martins*, supra at 169.

Further, the Court should not permit Fannie Mae to ignore paragraph 22 altogether because Fannie Mae is the entity that drafted paragraph 22. In the early 1970s, Fannie Mae and Freddie Mac set out to create a standard mortgage form to be used nationwide. See Julia Patterson Forrester, Fannie Mae/Freddie Mac Uniform Mortgage Instruments: The Forgotten Benefit to Homeowners, 72 Mo. L. Rev. 1077, 1084 (2007). Groups representing lenders and borrowers raised objections to the provisions of the initial draft forms. *Id*. In response to demands by Senators, members of Congress, and consumer rights advocates, including Ralph Nader, Fannie Mae and Freddie Mac held a public hearing between April 5-6, 1971, to discuss numerous provisions of the proposed standardized mortgage form. *Id*. The public hearing was chaired by a Congressman, and forty witnesses testified about the forms, including Nader. *Id*. In light of this history, it is hard to accept Fannie Mae's argument that requiring strict compliance with paragraph 22 is a substantial change in the law. To allow Fannie Mae to disregard the notice requirements in paragraph 22 would invalidate the hard work that members of Congress and consumer advocates put into advocating for the protections that paragraph 22 creates for consumer borrowers. See also Raymond A. Jensen, Mortgage Standardization: History of Interaction of Economic, Consumerism and Governmental Pressure, 7 Real Prop. Prob. & Tr. J. 397, 398 (1972).

On page 8 of Fannie Mae's Memo, Fannie Mae contends that applying the *Martins* decision "would wreak havoc on title to previously foreclosed properties throughout the State of Rhode Island." However, Fannie Mae provides no evidence to support this claim. Fannie Mae has not specified what this alleged "havoc" is, whether it be a major crash in land prices in

Rhode Island, or a wave of lawsuits alleging defective foreclosure (apparently Fannie Mae fears a larger wave than the MERS-related cases filed in this Court several years ago), or the inability of lenders to foreclose on delinquent mortgages. Almost a year has passed since this Court issued the *Martins* decision, and there does not appear to be "havoc" of any sort. Only two cases appear to have cited *Martins*. See *Shawmut Realty Co. v. United States Bank*, No. 16-cv-113-M-LDA, 2017 U.S. Dist. LEXIS 26266 (D.R.I. Feb. 21, 2017); *Pemental v. Bank of N.Y. Mellon*, No. 16-483S, 2017 U.S. Dist. LEXIS 122971 (D.R.I. May 10, 2017). In both cases, the challenge to the foreclosure was denied. Any "havoc" that may result from the *Martins* decision stems Fannie Mae's failure (and the failure of its servicing agents) to comply with the mortgage contract that Fannie Mae drafted, negotiated, and agreed to. The Plaintiffs should not lose the benefit of the protections in paragraph 22 simply because Fannie Mae claims, without support, that it could lead to "havoc."

Also on page 8 of Fannie Mae's Memo, Fannie Mae argues that there is no harm to Plaintiffs for Fannie Mae's complete failure to comply with paragraph 22 because 1) Plaintiffs have not "produced any evidence that they were unable to reinstate their mortgage" and 2) Plaintiffs "have not complained, testified, or otherwise submitted evidence that they were unaware of their ability to bring court action to challenge the foreclosure." However, in Rhode Island, courts review whether the party asserting the default has fulfilled the conditions in the contract, without considering whether the lack of notice caused harm to the defaulting party. See *Hedco, Ltd. v. Blanchette*, 763 A.2d 639, 642 (R.I. 2000) ("In considering the sufficiency of a termination notice, we have repeatedly stated that 'the important factor is whether the statute has been complied with and not whether the tenant has been misled by the notice given.'") (quoting *Tate v. Peter Charles Reynolds, Inc.*, 622 A.2d 449, 450 (R.I. 1993) (per curiam), *De Luca v.*

8

*Cinima*, 72 R.I. 346, 350, 51 A.2d 369, 370-71 (1947)). In *Martins*, this Court quoted from *Hedco, Ltd. v. Blanchette*, and stated that whether the borrower was misled by the notice is not a relevant consideration. "In analyzing the sufficiency of notice, this Court will not concern itself with 'whether the [borrower] has been misled by the notice given.'" *Martins*, supra 214 F. Supp. 3d at 170.

2. **Fannie Mae's claim that it has not accelerated the note is without merit and not relevant**

In pages 10-11 of Fannie Mae's Memo, Fannie Mae contends that it never accelerated the entire balance due under the note, and then tries to argue that because paragraph 22 requires a notice of default "prior to acceleration," compliance with paragraph 22 is not a condition precedent to the filing of the foreclosure action. That conclusion is contrary to the express language of paragraph 22 and the *Martins* decision.

According to paragraph 22, only after "the default is not cured on or before the date specified in the notice" may the Lender "require immediate payment in full of all sums secured by this Security Instrument without further demand [i.e. accelerate the balance] and may invoke the statutory power of sale and any other remedies permitted by Applicable Law" including the remedy of judicial foreclosure under RI Gen. Laws. § 34-27-1. Even if Fannie Mae has not accelerated the balance, it still may not, pursuant to paragraph 22, "invoke ... any other remedies permitted by Applicable Law" until Fannie Mae has complied with paragraph 22 and waited until the date specified in the notice has passed. In other words, until Fannie Mae has complied with paragraph 22 and waited until the date specified in the notice has passed, it may not do any of the following things:

1) require immediate payment in full of all sums secured by the Security Instrument;

9

2) invoke the statutory power of sale; or

3) invoke any other remedies permitted by Applicable Law, including the filing of a judicial foreclosure.

Fannie Mae's argument that it has not accelerated is also without factual basis. In its Counterclaim, Docket Entry No. 15, Fannie Mae stated that it already accelerated the balance due under the note. Fannie Mae stated at paragraph 13, "Fannie Mae notified the Borrowers of their default, acceleration of the loan, and their opportunity to cure in accordance with the Mortgage." At paragraph 17 of its Counterclaim, Fannie Mae stated, "the Borrowers' default on the Note breached the uniform covenants of the Mortgage, which permit Fannie Mae to accelerate the loan to maturity and demand full payment." At paragraph 18 of its Counterclaim, Fannie Mae stated, "the Borrowers have failed to cure their default at any time after failing to pay monthly installments and following notice of acceleration." But now, after affirmatively stating in its own pleading that the note had already been accelerated, and without presenting any evidence to the contrary, Fannie Mae claims that acceleration has not yet occurred. It is clear Fannie Mae created this argument concerning acceleration in a vain attempt to circumvent the holding of *Martins*, and the decision of many courts around the country that require compliance with paragraph 22 (whether strict compliance or substantial compliance) as a condition precedent to filing a judicial foreclosure action. The Plaintiff cited eight cases from different jurisdictions holding that compliance with paragraph 22 is required prior to commencing an action for judicial foreclosure. See Plaintiff's Memorandum in Support of Summary Judgment at pages 5-6. Fannie Mae has not cited one case to oppose this universally accepted legal theory.

On pages 10-11, Fannie Mae relies on the case of *Bartram v. U.S. Bank, N.A.*, 211 So. 3d 1009 (2016). Nothing in that case permits a mortgagee to avoid the requirements of paragraph 22

by claiming that the note was not accelerated until judgment entered. In the *Bartram* case, the court considered whether the five-year statute of limitations applied when a mortgagee's previous foreclosure case had been dismissed without prejudice. *Id.*, at 1011-1012. The mortgagee filed a second foreclosure action based on the borrower's failure to make payments after the dismissal of the first foreclosure action, but within five years of initiation of the second foreclosure action. The court held "the effect of the involuntary dismissal is revocation of the acceleration, which then reinstates the mortgagor's right to continue to make payments on the note and the right of the mortgagee, to seek acceleration and foreclosure based on the mortgagor's subsequent defaults." *Id.*

The *Bartram* case fails to address whether compliance with paragraph 22 is required as a condition precedent to the filing of a foreclosure action, as Fannie Mae suggests. The correct application of the *Bartram* decision to the facts of this case result in a finding that after this Court entered the order rescinding the foreclosure, the Plaintiffs' mortgage was no longer accelerated and the Plaintiffs could resume making payments. Consequently, Fannie Mae must wait to see if the Plaintiffs subsequently defaulted, then provide a new notice of default as required by Paragraph 22, then wait until the date specified in the notice passes before filing a counterclaim for judicial foreclosure.

3. **Plaintiffs did not waive defenses to the judicial foreclosure by requesting a pre-foreclosure hearing to comply with the United States Constitution**

On pages 11-12, Fannie Mae argues that because the Plaintiffs filed this lawsuit seeking a judicial foreclosure,[1] "Plaintiffs cannot now complain over Fannie Mae's 'initiation' of a judicial

---

[1] Plaintiffs actually seek a determination that Fannie Mae must provide a hearing prior to foreclosure of a person's primary residence in order to comply with the due process clause of the Fifth Amendment to the United States Constitution.

foreclosure action...." However, Plaintiffs requested a pre-foreclosure hearing precisely so that Plaintiffs can present defenses to the foreclosure. See Complaint, ECF No. 1, at ¶¶ 51-52. By raising defenses at a pre-foreclosure hearing, Plaintiffs would seek to have the foreclosure proceeding stopped, or in the case of a judicial foreclosure action, dismissed. By requesting a pre-foreclosure hearing, Plaintiffs have not waived any defenses they may have in such a hearing, including the defense that Fannie Mae failed to satisfy a condition precedent to maintain an action for judicial foreclosure.

## **CONCLUSION**

In addition to the *Martins* decision, the Plaintiff cited eight cases that require compliance with paragraph 22 prior to commencing an action for judicial foreclosure. Fannie Mae has presented no cases that excuse compliance with paragraph 22 until after the foreclosure action is filed. Fannie Mae admitted in its counterclaim that it accelerated the balance due, and its contrary assertion in its objection is irrelevant to the material issue in this case. It is undisputed that Fannie Mae did not comply with paragraph 22 prior to commencing this action for foreclosure. Therefore, because Fannie Mae failed to comply with a condition precedent, judgment must enter in the Plaintiffs' favor on the counterclaim.

Respectfully submitted,
Nancy A. Boynton and
Patricia Beekes
By Their Attorneys,

/s/ Jeffrey C. Ankrom
Jeffrey C. Ankrom, Esq. (#7663)
Rhode Island Legal Services
56 Pine Street, Suite 400
Providence, RI, 02903
(401) 274-2652, ext. 138
(401) 272-4280 fax
jankrom@rils.org

/s/ Steven Fischbach, Esq.
Steven Fischbach, Esq. (#3259)
Rhode Island Legal Services
56 Pine Street, Suite 400
Providence, RI, 02903
(401) 274-2652, ext. 182
(401) 272-4280 fax
sfischbach@rils.org

Dated: August 31, 2017

**CERTIFICATE OF SERVICE**

This is to certify that on August 31, 2017, I served a copy of the Motion for Summary Judgment through the court's CM/ECF system:

Samuel Bodurtha, Esq.
Ethan Tieger, Esq.
Hinshaw & Culbertson, LLP
321 South Main Street, Suite 301
Providence, RI 02903

Matthew Kane, Esq.
Laredo & Smith, LLP
101 Federal Street Suite 650
Boston, MA 02110

/s/ Jeffrey C. Ankrom, Esq.
Jeffrey C. Ankrom, Esq.